IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LEE EDWIN CALDWELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:04-CV-2166-L |
| | § | |
| NATHANIEL QUARTERMAN, Director, | § | |
| TDCJ-CID, MITCHELL COUNTY | § | |
| HOSPITAL DISTRICT, GAIL | § | |
| ANDERSON, and TDCJ WALLACE UNIT | § | |
| MEDICAL STAFF, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant Mitchell County Hospital District's Motion for Partial Summary Judgment, filed April 26, 2007. After careful consideration of the motion, brief, appendix, competent summary judgment evidence, record, and applicable law, the court **grants** Defendant Mitchell County Hospital District's Motion for Partial Summary Judgment as to Plaintiff Lee Edwin Caldwell's claims under 42 U.S.C. § 1983 and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* and **defers** any decision on exercising supplemental jurisdiction over his state law claims, as there are remaining federal claims in this case.

**I.    Factual and Procedural Background**

This is a civil rights action brought by *pro se* Plaintiff Lee Edwin Caldwell ("Caldwell" or "Plaintiff") against Defendants Dallas County Sheriff Jim Bowles ("Bowles"), Dallas County Lew Sterrett Medical and Jail Staff ("Jail Staff"),[1] Director of the Texas Department of Criminal Justice,

---

[1]This action was dismissed with prejudice as to Defendants Bowles and the Jail Staff on November 3, 2005.

**Memorandum Opinion and Order- Page 1**

Correctional Institutions Division ("TDCJ-CID") Gary Johnson ("Johnson"),[2] Doug Dretke ("Dretke"),[3] Mitchell County Hospital District ("MCHD"),[4] Dr. Richard Hults ("Hults"),[5] Gail Anderson ("Anderson"),[6] and the TDCJ-CID Wallace Unit medical staff ("Wallace Staff")[7] (collectively "Defendants"). Caldwell asserts that he suffered from the following ailments while incarcerated at TDCJ-CID Wallace Unit ("Wallace Unit"): (i) blood in his urine; (ii) "emergent" diabetes; (iii) "digestive" problems; (iv) open sores, visible infections, and gangrene; (v) arthritis in both feet; (vi) fainting episodes; (vii) hypothermia; and (viii) vomiting. Pl.'s Am. Pet. ¶ 29. Caldwell does not allege that he was completely denied medical care for the aforementioned conditions; rather, he contends that Wallace Unit Staff failed to properly diagnose his numerous ailments and appropriately care for the conditions that they did diagnose. Plaintiff states that the staff treated the presence of blood in his urine with "excessive UA's," treated his "emerging"

---

[2] Johnson was dismissed as a Defendant on May 23, 2005.

[3] The court dismissed with prejudice all section 1983 claims against Dretke, as well as all ADA claims that accrued prior to October 5, 2002, leaving intact Plaintiff's ADA claims that accrued following October 5, 2002, and Title II disability discrimination claims. The court also deferred a decision on whether to exercise its supplemental jurisdiction over Plaintiff's state law claims against Dretke by its order of May 22, 2006. Effective June 1, 2006, Nathaniel Quarterman succeeded Dretke as the Director of TDCJ-CID. Under Rule 25(d), Fed. R. Civ. P., Nathaniel Quarterman "is automatically substituted as a party."

[4] The court denied MCHD's motion to dismiss on January 18, 2006, leaving intact Plaintiff's section 1983 and ADA claims against it. The court also deferred a decision on whether to exercise the court's supplemental jurisdiction over Plaintiff's state law claims against MCHD.

[5] The court dismissed with prejudice all section1983, ADA, and federal claims against Hults on February 2, 2006, but it deferred a decision on whether to exercise the its supplemental jurisdiction over Plaintiff's state law claims against Hults. The court dismissed Defendant Hults on July 27, 2007 pursuant to the Suggestion of Death, filed August 18, 2006.

[6] The court dismissed with prejudice all section1983, ADA, and federal claims against Anderson on January 18, 2006, but it deferred a decision on whether to exercise its supplemental jurisdiction over Plaintiff's state law claims against Anderson. The court dismissed Defendant Anderson on November 30, 2007 pursuant to the Suggestion of Death, filed August 14, 2007.

[7] In footnote 2 of the court's scheduling order dated July 30, 2007, the court incorrectly noted that the only remaining Defendants in this action were Quarterman, MCHD and Anderson. Wallace Staff also remains a Defendant. **Accordingly, the remaining Defendants in this action are Quarterman, MCHD, Anderson, and Wallace Staff.**

diabetes and "digestive problems" by giving him "more insulin and pills," and responded to his fainting episodes by giving him orange juice to revive him. *Id.* He also alleges that he was denied pain medications, a medical work release, diabetic footwear, a cell pass so that he could rest during the day, a bottom bunk, and dental cleaning. *Id.* Finally, Caldwell alleges that he was forced to work in ill-fitting steel toe boots in a position that required standing, was required to sleep in an upper bunk, and was fed a "dangerously inappropriate diet." *Id.*

MCHD filed Defendant Mitchell County Hospital District's Motion for Partial Summary Judgment on April 26, 2007. MCHD moves for summary judgment on Caldwell's claims brought under 42 U.S.C. § 1983 ("section 1983") and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. MCHD maintains that: (1) Caldwell has not established the essential elements required to maintain an action based on municipal liability under section 1983 and (2) Caldwell has not established a prima facie case for his ADA claim, as he has offered no competent summary judgment evidence that he was excluded from participation in or denied benefits of an MCHD program or that any such exclusion or denial was because of his disability. MCHD also requests the court to refuse to exercise supplemental jurisdiction over Caldwell's state law claims if his federal claims are dismissed. Caldwell did not file a response to the motion.

## II. Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact

is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed

fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

Plaintiff filed no response to the summary judgment motion. This failure, of course, does not permit the court to enter a "default" summary judgment. *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). Normally, "[a] summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Schubzda*, 945 F.Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). In this case, however, Plaintiff's live pleading, Plaintiff's Amended Original Petition [sic], is verified, and the court, to the extent permitted by the applicable law governing summary judgments, will consider his pleadings.

## III. Analysis

### A. Plaintiff's Section 1983 Claim

Plaintiff contends that MCHD deprived him of his constitutional rights guaranteed by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and "with knowledge of [his] serious medical needs and disabilities, acted or failed to act with deliberate indifference to such medical needs and conditions." Pl.'s Am. Pet. at 22. Plaintiff maintains that MCHD's "refusal to recognize, acknowledge, and make consideration for [his] disabilities and medical needs constituted malicious indifference to [his] medical needs." Pl.'s Am. Pet. 23.

In its motion for summary judgment, MCHD contends that Plaintiff fails to "identify a municipal policymaker who could be held responsible, through actual or constructive knowledge,

for enforcing a policy that caused the [his] injuries." Def.'s Br. 5. MCHD also asserts that Plaintiff fails to establish that MCHD was a moving force behind the alleged deprivations. *Id.* MCHD contends that it did not promulgate any policies regarding treatment at the Wallace Unit and that the treatment policies were instead "the domain of the Texas Tech University Health Sciences Center as directed by the Managed Health Care Advisory Committee." *Id.*

A governmental entity can be sued and subjected to monetary damages and injunctive relief under section 1983 only if its official policy or custom causes a person to be deprived of a federally protected right. *Board of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A governmental entity *cannot* be liable for civil rights violations under a theory of respondeat superior or vicarious liability. *Id. See also Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979). Official policy is defined as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [county] lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of [county] officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [county] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the [county] or to an official to whom that body had delegated policy-making authority.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (*en banc*) (per curiam); *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (*en banc*) (per curiam), *cert. denied*, 472 U.S. 1016 (1985). A plaintiff must identify the policy, connect the policy to the governmental entity itself, and show that his injury was incurred because of the application of that specific policy. *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984), *cert. denied*, 472 U.S. 1016 (1985). A plaintiff must establish that the governmental entity through its deliberate conduct "was the moving force behind

**Memorandum Opinion and Order- Page 6**

the injury alleged" and must establish a direct causal link between the governmental entity's action and the deprivation of a federally protected right. *Bryan County v. Brown,* 520 U.S. at 404.

Liability must rest on official policy, meaning the governmental entity's policy, and not the policy of an individual official. *Bennett*, 728 F.2d at 769. The official complained of must possess

> [f]inal authority to establish [county] policy with respect to the action ordered. . . . The official must also be responsible for establishing final government policy respecting such activity before the [county] can be held liable. . . .[W]hether an official had final policymaking authority is a question of state law.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-482 (1986). An employee, agency, or board of a governmental entity is not a policymaker unless the governmental entity, through its lawmakers, has delegated exclusive policymaking authority to that employee agency or board and *cannot* review the action or decision of the employee, agency or board. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Worsham v. City of Pasadena*, 881 F.2d 1336, 1340-41 (5th Cir. 1989).

The policy or custom relied upon to establish liability may include the inaction of official policymakers, but only when such inaction constitutes "deliberate indifference" to the rights of the plaintiff, and such indifference is a "closely related" cause of the plaintiff's injuries. *City of Canton v. Harris,* 489 U.S. 378, 388, 391 (1989). In the context of municipal liability, to constitute deliberate indifference, the failure or inaction "must amount to an intentional choice, not merely an unintentionally negligent oversight." *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992) (citing *City of Canton*, 489 U.S. at 390). In other words, "the constitutional standard of conduct must step up from negligence - that [is,] it must be more than mere or even gross negligence." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 645 (5th Cir. 1996) (*en banc*). The terms "gross negligence" and "deliberate indifference" are sometimes confused and interchanged; however, "deliberate indifference" is a stricter standard." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 n.7 (5th Cir.)

(en banc), *cert. denied sub nom, Lankford v. Doe*, 513 U.S. 815(1994) (citation omitted). "'Gross negligence' is a heightened degree of negligence, whereas 'deliberate indifference' is a 'lesser form of intent.'" *Id.*

The type and quantum of proof a plaintiff must offer to establish deliberate indifference varies, however, with the type of inaction alleged and with the identity of the wrongdoer. When the wrongdoer is a policymaking official, a single act will suffice, if deliberate indifference and causation are established. *See, e.g., Pembaur,* 475 U.S. at 481 ("[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly."). When the challenge relates to a custom of behavior among non-policymaking employees, which may be contrary to official policy, the plaintiff cannot rely on a single instance of unconstitutional conduct, but must demonstrate "at least a pattern of similar incidents in which the citizens were injured . . . to establish the official policy requisite to municipal liability under section 1983." *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir.) (quoting *Rodriguez v. Avita*, 871 F.2d 552, 554-55 (5th Cir. 1989) (internal quotation and citation omitted)), *cert. dismissed*, 526 U.S. 1083 (1999). Isolated violations are not persistent, often repeated constant violations that constitute custom or policy. *Bennett*, 728 F.2d at 768 n.3. In such "custom" cases, "where the violations are flagrant or severe, the fact finder will likely require a shorter pattern of the conduct to be satisfied that diligent governing body members would necessarily have learned of the objectionable practice and acceded to its continuation." *Id.* at 768.

As Plaintiff's Amended Original Petition [sic] is not a model of pellucid draftsmanship, the court has labored to identify the specific theory under which Plaintiff pursues liability. Accordingly, the court will address the possible theories it believes are raised by the pleadings on which Plaintiff

**Memorandum Opinion and Order- Page 8**

can pursue a section 1983 action against MCHD. In the final analysis, the court determines that Plaintiff's evidence is insufficient to raise a genuine issue of material fact under any theory.

1. **Official Policy**

Plaintiff does not allege, and there is no evidence in the record that establishes, or raises a genuine issue of material fact, that MCHD took affirmative steps through an order, policy statement, resolution, or otherwise, that authorized, condoned or encouraged its employees or officials to act with deliberate indifference to the medical needs of inmates in the Wallace Unit. Therefore, such a theory cannot provide a basis for MCHD liability in this case.

2. **Inaction of Official Policymakers**

To the extent that Plaintiff relies on the inaction of official policymakers, such theory necessarily fails because it is not supported by the record. Plaintiff alleges liability based upon MCHD's failure to "establish and implement policies, practices[,] and procedures" to ensure that Plaintiff received proper treatment and adequate medical care. Pl.'s Am. Pet. 22. Although Plaintiff may rely on the inaction of official policymakers to establish liability, this method is only viable when such inaction constitutes deliberate indifference to his rights, and such indifference is a closely related cause of his injuries. Plaintiff's bald assertion that MCHD acted with deliberate indifference in failing to establish and implement policies to ensure proper treatment and adequate medical care simply will not carry the day. At this juncture, Plaintiff must come forward with competent summary judgment evidence to establish MCHD's deliberate indifference by showing (i) a pattern of similar incidents in which others were denied adequate medical care, (ii) MCHD or an official to whom it delegated policy-making authority had actual or constructive knowledge that the current procedures result in a denial of adequate medical care to inmates, and (iii) MCHD or an official to

**Memorandum Opinion and Order- Page 9**

whom it delegated policy-making authority appreciated the danger that these procedures would result in a denial of adequate medical care and refused to adopt a policy to provide such care.

Plaintiff attempts to meet this burden by alleging inadequate provision of medical care by the Wallace Staff as evidenced by the "ongoing malpractice litigation from numerous inmates." Pl.'s Am. Pet. ¶ 29. This attempt falls short of the requisite showing. First, Plaintiff's recitation of the instances of alleged unconstitutional conduct toward him are insufficient to establish the frequent or widespread occurrences required for MCHD liability. Further, Plaintiff produces no evidence of specific prior instances of unconstitutional conduct toward other inmates that, when taken together, can establish "a pattern of similar incidents" and act as official policy for MCHD liability under section 1983. Second, Plaintiff directs the court to no competent summary judgment evidence that MCHD or an official to whom it delegated policy-making authority had actual or constructive knowledge of prior incidents of denial of medical care and made a conscious decision or intentional choice to disregard the medical needs of the inmates. Third, the summary judgment evidence shows that MCHD did not implement such policies because policies regarding the "type, frequency, or scope of medical care rendered at the Wallace Unit . . . and the classification of prison inmates for work assignments or [application of] restrictions [based upon] medical conditions" are promulgated by either the Texas Tech University Health Sciences Center or the Texas Department of Criminal Justice. Mize Aff. ¶ 2. Absent evidence that the current policies are insufficient, MCHD's reliance on the adequacy of such policies is reasonable. Accepting Plaintiff's allegations as true, MCHD's inaction constitutes negligence or, at most, gross negligence. As previously stated, a showing of negligence or gross negligence is inadequate to establish deliberate indifference. Therefore, this theory cannot provide a basis for MCHD liability in this case.

In sum, the record is devoid of competent summary judgment evidence that MCHD had a policy or custom that deliberately denied medical care to inmates. A reasonable jury could not conclude that MCHD adopted a policy or custom which made it obvious that an inmate's constitutional rights to medical care would be violated. For these reasons, Plaintiff fails to raise a genuine issue of material fact as to the existence of a policy or custom of MCHD that deprived him of his constitutional right to receive medical care as an inmate. Accordingly, MCHD is entitled to judgment as a matter of law.

B. **Plaintiff's ADA Claim**

In order to obtain relief under the ADA for denial of benefits, Plaintiff must show that he: (i) is a qualified individual with a disability, (ii) was either excluded from participation or denied the benefits of some public entity's services or programs, and (iii) was excluded by reason of his disability. *See Lightbourn v. County of El Paso*, 118 F.3d 421, 428 (5th Cir. 1997). Plaintiff fails to raise a genuine issue of material fact as to any element of his prima facie case of discrimination under the ADA.

First, Plaintiff fails to present any evidence as to the existence of a disability. 42 U.S.C. § 12102 defines "disability" as either: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." While the ADA does not define the terms "substantially limits" or "major life activities," the regulations promulgated by the Equal Employment Opportunity Commission ("EEOC") provide significant guidance. *See Bridges v. City of Bossier*, 92 F.3d 329, 332 (5th Cir. 1996). The EEOC regulations provide that "major life activities" are "functions such as caring for oneself, performing manual tasks, walking, seeing,

hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). "Substantially limits" means (a) unable to perform a major life activity that the average person in the general population can perform, or (b) significantly restricted as to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1)(i)-(ii).

When viewing the facts in a light most favorable to Plaintiff, the court determines that Plaintiff does not establish a disability as defined by the ADA. Although Plaintiff states that he suffers from a laundry list of ailments or impairments, he fails to establish that they substantially limit one or more of his major life activities. "The effects of an impairment must be severe to qualify as a disability under the ADA." *Waldrip v. General Elec. Co.*, 325 F.3d 652, 655 (5th Cir. 2003) (citing *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 197 (2002)). Plaintiff admits that, while at the Wallace Unit, he worked as a garment folder without restrictions or medical work releases. The extensive factual allegations made by Plaintiff makes no mention of others having to care for him. Plaintiff recounts numerous conversations and meetings with various Wallace Unit Staff, which evidence his ability to walk, speak, and hear. Although Plaintiff appears to allege a record of impairments, he offers no proof to establish that such impairments substantially limit one or more of his major life activities. Plaintiff admits that Wallace Unit Staff did not regard Plaintiff as disabled, that is, having an impairment that substantially limits one or more of his major life activities. Therefore, Plaintiff fails to establish a genuine issue of material fact that he was disabled within the meaning of the ADA, and MCHD is entitled to judgment as a matter of law.

Second, even of the court were to determine that Plaintiff is disabled within the meaning of the ADA, his claim fails nonetheless. Although Plaintiff's complaint contains an extensive summary

**Memorandum Opinion and Order- Page 12**

of the alleged wrongdoing of the Wallace Unit Staff, he offers no evidence that he was either excluded from participation in or denied the benefits of MCHD services or programs. The inadequate medical treatment of a disability is insufficient to provide a basis for liability under the ADA. *See Carrion v. Wilkinson*, 309 F. Supp. 2d 1007, 1016 (N.D. Ohio 2004) (dismissing diabetic prisoner's ADA claim based upon the denial of a diabetic diet); *see also Galvin v. Cook*, No. CV 00-29-ST, 2000 WL 1520231, at *6 (D. Or. Oct. 3, 2000) (granting summary judgment on diabetic prisoner's ADA claim where prisoner alleged that he was given improper doses of medication and given inadequate treatment). The record is devoid of any competent summary judgment evidence of any MCHD programs or services from which Plaintiff was excluded as a result of his alleged disability. Therefore, Plaintiff fails to establish a genuine issue of material fact that he was excluded from participation in or denied the benefits of MCHD's services or programs, and MCHD is entitled to judgment as a matter of law.

Finally, even if Plaintiff established that he is a qualified individual with a disability and that he was either excluded from participation or denied the benefits of MCHD's services or programs, his claim still fails. Plaintiff fails to present any evidence that he was excluded by reason of his disability. Because he has not established an underlying exclusion from participation in or denial of benefits of MCHD's services or programs, he is necessarily unable to establish a discriminatory motive for the exclusion or denial. Therefore, Plaintiff fails to establish a genuine issue of material fact as to whether he was excluded was excluded by reason of his disability. Plaintiff fails to raise a genuine issue of material fact as to any element of his prima facie case of discrimination under the ADA. Accordingly, MCHD is entitled of judgment as a matter of law.

### IV. Conclusion

For the reasons herein stated, no genuine issues of material fact exist with respect to Caldwell's federal claims that MCHD deprived him of constitutional rights guaranteed by the Fifth, Eighth and Fourteenth Amendments to the United States Constitution, and acted with deliberate indifference to his medical needs. Accordingly, the court **grants** Defendant Mitchell County Hospital District's Motion for Partial Summary Judgment as to Plaintiff Lee Edwin Caldwell's claims under 42 U.S.C. § 1983 and claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*;**dismisses with prejudice** these claims against Defendant Mitchell County Hospital District; and **defers** any decision on exercising supplemental jurisdiction over his state law claims, as there are remaining federal claims in this case.

**It is so ordered** this 12th day of December, 2007.

Sam A. Lindsay
United States District Judge